# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GARY W. BROWN** | : | **DOCKET NO. 06-0326** |
| | | |
| **VS.** | : | **JUDGE MINALDI** |
| | | |
| **JO ANNE B. BARNHART,** | : | **MAGISTRATE JUDGE WILSON** |
| **COMMISSIONER OF SOCIAL** | | |
| **SECURITY** | | |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is supported by substantial evidence in the record and is consistent with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

On January 21, 2004, Gary W. Brown protectively filed an application for Supplemental Security Income benefits. (Tr. 41-44). He alleged an inability to work since October 1, 2000, due to seizures, asthma, nerves, and a past heart attack. (*See*, Tr. 42, 164). The claim was denied at the initial stage of the administrative process. (Tr. 17, 19-22). Thereafter, Brown requested, and received a July 5, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 215-237). However, in a July 26, 2005, written decision, the ALJ determined that Brown was not disabled under the Act, finding at Step Two of the sequential evaluation process that he did not have any

medically determinable impairments. (Tr. 11-15). Brown appealed the adverse decision to the

Appeals Council. However, on December 22, 2005, the Appeals Council denied Brown's request

for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

Brown now seeks to have this court review the denial of benefits. He alleges the following

errors:

(1)     the ALJ failed to develop the record regarding plaintiff's mental impairment by
        failing to include all available evidence;

(2)     the ALJ failed to consider all available evidence in determining the existence and
        severity of plaintiff's impairments; and

(3)     the ALJ failed to properly assess the plaintiff's mental impairment.

### STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining

whether the administrative decision is supported by substantial evidence and whether the decision is

free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's

decision is supported by substantial evidence, the findings therein are conclusive and must be

affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not

supported by substantial evidence when the decision is reached by applying the improper legal

standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.

Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a

medically determinable physical or mental impairment that prevented him from engaging in any

substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) &

1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices

or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th

Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The Commissioner evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Commissioner to establish that the claimant can perform other work. If the Commissioner meets this burden, then the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

At Step Two of the sequential evaluation process, the ALJ determined that Brown had no medically determinable impairments. The regulations provide that an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . ." 20 C.F.R. § 416.908.

With respect to plaintiff's alleged physical impairments, the ALJ's decision was obviously influenced by the reports of the consultative physicians and by surveillance conducted by the Cooperative Disability Investigations Unit.

On April 30, 2004, plaintiff was seen by Flynn Taylor, M.D. for a physical examination at the request of Disability Determination Services. (Tr. 162-163). Plaintiff said that he had not suffered a seizure in one and one-half years. *Id*. During the examination, Brown was

extraordinarily sleepy and lethargic. *Id*. Brown walked with a broad-based gait. *Id*. His lungs were clear to auscultation and percussion. *Id*. He had a regular cardiovascular rate and rhythm, without murmur. *Id*. Dr. Taylor expressed no opinion regarding any impairments or limitations. *Id*.

On April 20, 2004, plaintiff was seen by Lawrence S. Dilks, Ph.D., for a psychological evaluation. (Tr. 164-166). Dilks noted an inconsistent limp upon presentation. *Id*. Dilks observed that upon departing and reaching the parking lot, Brown's limp completely disappeared, and his demeanor brightened as he engaged in lively conversation with others. *Id*. Dilks could not rule out secondary gain. *Id*.

On April 20, 2004, Brown was observed by two Attorney General Investigators entering and exiting Dr. Dilks' office. (Tr. 181C). Upon entering the office, Brown had a noticeable limp. *Id*. Yet, shortly after leaving the office, Brown's limp was no longer observable. *Id*. Thereafter, Brown walked over one mile while exhibiting an unremarkable stride and gait. *Id*.

On April 29, 2004, Brown was again observed by two Attorney General Investigators. (Tr. 181D-181E). Brown limped into his consultative appointment with Dr. Taylor. *Id*. Upon departing, Brown appeared to be in great pain as he climbed into a taxi. *Id*. Yet, fifteen minutes after Brown was dropped off by the taxi, he was observed across the street laughing and talking with several others. *Id*.[1] Brown then spotted the investigators and limped back across the street to his residence. *Id*.

At the hearing, Brown's explanation for the investigators' observations was that he had some good days and some bad days, and that his condition had progressively worsened since 2004. (Tr. 227-228). However, Brown's explanation does not account for the sudden vacillations in his condition depending on whether he perceived that he was under surveillance.

---

[1] Brown's lively demeanor stands in stark contrast to his extraordinarily sleepy and lethargic presentation to Dr. Flynn just a short while earlier.

Given Brown's apparent attempts to mislead the government, we conclude that there is ample evidence to support the ALJ's determination that he did not suffer any medically determinable physical impairments.

Citing 20 C.F.R. § 416.920a, plaintiff next contends that the ALJ failed to address the limitations of his alleged cognitive impairment. However, a plain reading of § 416.920a reveals that a prerequisite to addressing the functional limitations imposed by a mental impairment is that the claimant suffer a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1). Here, of course, the ALJ determined that plaintiff had no medically determinable impairments. (Tr. 14). The ALJ further explained that although Brown may suffer some degree of cognitive impairment, his apparent malingering made it impossible to assess its nature or extent. *Id*. The ALJ's determination is supported by substantial evidence.

During his April 20, 2004, evaluation, Dr. Dilks observed that Brown's attention, concentration, pace, and persistence were deficient and that redirection was ineffective. *Id*. Brown had a driver's license, and said that he could drive a car. *Id*. Upon administration of the WAIS-III, Brown obtained a verbal IQ of 48, a performance IQ of 53, and a full scale IQ of 46. *Id*. However, Dilks opined that the scores were invalid. *Id*. Brown failed to successfully complete the 15-Item Test for malingering. *Id*. Dilks opined that Brown's cognitive abilities were far superior to what was represented by the IQ test. *Id*. He was capable of understanding instructions, relating to others, sustaining attention, tolerating stress and sustaining activities. *Id*. He did not appear to need close supervision. *Id*. Dilks opined that Brown was capable of acquiring some degree of gainful employment. *Id*.

Brown complains that the ALJ failed to fully and fairly develop the record by not incorporating medical records indicating that he was mentally retarded as far back as 1976. The ALJ does owe a duty to the claimant to develop the record fully and fairly to ensure that the decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996).

Yet, to obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must also demonstrate resulting prejudice. *Id.* "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted).

We are not convinced that the ALJ needed to incorporate Brown's prior medical records. Brown was recently examined by a consultative examiner who found him to be malingering, and capable of working. Brown argues that the 1976 records were generated when he was 13 years old, and thus predate any suggestion of malingering. Yet, if, as the record suggests, plaintiff practiced deception to advance his current claim for benefits, there is every reason to believe that he may have done so in the past. Moreover, if plaintiff had the cognitive capacity to successfully obtain benefits via deception in the past, this would tend to establish that he does not suffer any significant cognitive impairment.[2] Likewise, plaintiff's 80 percent score on the motor vehicle written examination, belies any significant cognitive impairment. (Tr. 181E). Yet, even if the ALJ should have considered Brown's prior medical records, plaintiff has failed to demonstrate that the records would have altered the result. *See, Brock, supra.*[3]

In sum, we find that the ALJ's determination that plaintiff was not disabled under the Act, is supported by substantial evidence and is free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed and the matter dismissed.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.

---

[2] According to counsel, plaintiff's previous award of SSI benefits was discontinued upon his incarceration (apparently for purse snatching). (*See*, Pl. Brief, pg. 7, and Tr. 181B).

[3] Plaintiff has not adduced the records, and statements by counsel do not constitute evidence. *Skyline Corp. v. N.L.R.B.,* 613 F.2d 1328, 1337 (5th Cir. 1980).

Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on November 15, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE